39 C.C.P.A.(Patents)
## Application of DUPONT et al.
### No. 5873.

United States Court of Customs and Patent Appeals.
May 28, 1952.

Soans, Pond & Anderson, Chicago, Ill. (Cyril A. Soans, Ernest V. Haines, William E. Anderson, Chicago, Ill., and George R. Jones, Washington, D. C., of counsel), for appellants.

E. L. Reynolds, Washington, D. C. (H. S. Miller, Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, C. J., and JACKSON, O'CONNELL, JOHNSON, and WORLEY, JJ.

GARRETT, Chief Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming that of the Primary Examiner rejecting the four method claims

in appellants' application for patent entitled "Elimination of iron from minerals."

No claim was allowed.

The process defined in the appealed claims is directed to the elimination of iron impurities from phosphate rock, which rock is used principally, along with other ingredients such as potash and nitrates, in the manufacture of fertilizers.

The specification recites that the object of the alleged invention is two-fold; viz., (a) " * * * to eliminate iron which, if allowed to remain in the mineral, would impair its usefulness for various purposes," and (b) " * * * to effect an increase in the content of the useful or available ingredients or chemicals in the mineral."

In connection with the latter object it is recited, in substance, that some phosphate rock obtained from various deposits is comparatively low in bone phosphate of lime (B.P.L.) and that it is very desirable that the content of that ingredient of fertilizer should be raised to the end that the finished phosphate rock product may be of greater economic value than the normal phosphate of lime "having a relatively lower B.P.L. content."

In other words, the application teaches that, by the process therein defined, a substance (iron), deleterious to phosphate rock when such rock is applied to fertilizer use, is eliminated, and teaches also that the process increases the bone phosphate content of lime (B.P.L.).

In the brief on behalf of appellants before us, it is said that appealed claim 1 is typical. It reads:

"1. The method of purifying phosphate rock containing iron impurities, which comprises: exposing the rock in comminuted form to gaseous hydrogen chloride containing at least about 70 percent of hydrogen chloride by volume at a temperature between about 350° and 400° C., whereby the iron is separated from the rock in the form of ferric chloride vapor, withdrawing the ferric chloride vapor and the excess hydrogen chloride from the reaction zone, and separating the ferric chloride from the hydrogen chloride."

After quoting it, the brief continues:

"As to the other claims on appeal, claim 2 is substantially similar to claim 1, except that the rock is stated to be comminuted to such an extent that a substantial part of the particles are between 35 and 65 mesh. Claim 3 is similar to claim 2, with the exception that the preferred temperature range of from 350° to 380° C. is substituted for the broader range of 350° to 400° C. set forth in that claim. Claim 4 is similar to claim 3 but in addition requires that the rock be held in the reaction zone 20 to 30 minutes and that the excess hydrogen chloride be recycled to the reaction zone."

The tribunals of the Patent Office held, in effect, that the claims presented nothing patentable over the disclosure contained in the following patents:

| | | |
|---|---|---|
| Schroder, | 991,096, | May 2, 1911, |
| Lay, | 1,129,407, | Feb. 23, 1915, |
| Saklatwalla, | 1,845,342, | Feb. 16, 1932, |
| Mitchell, | 1,979,280, | Nov. 6, 1934, |
| Kinney, | 2,290,843, | July 21, 1942. |

The Schroder and Lay patents were cited as primary references, the rejection being based upon them in view of any one of the other patents cited.

It will be observed that the appealed claims provide for the removal of iron impurities by treating the phosphate rock with gaseous hydrogen chloride at a temperature between 350° C. and 400° C., claims 3 and 4 stating a range of 350° C. to 380° C., and that the gaseous hydrogen chloride contains at least 70 per cent hydrogen chloride by volume.

It is said in the claims that this results in separating the iron from the rock in the form of ferric chloride vapor. This, of course, is a result stated in the body of the claims and forms no part of the process itself, but it serves as an introduction to that part of the remainder of the claims providing, in substance, for withdrawing the ferric chloride vapor and the excess hydrogen chloride from the reaction zone

and then separating the ferric chloride from the hydrogen chloride.

The specification states that the process makes use of the "principle involved" in the reaction:

$$Fe_2O_3 + 6\ HCl = 2\ FeCl_3 + 3\ H_2O + 35{,}280\ calories\ (exothermic).$$

The specification of the Schroder patent recites the following:

"This invention has for its object an improved process of treating aluminum-iron phosphates and calcium-aluminum-iron phosphates by means of chlorids of alkaline-earth metals in the presence of water whereby I am enabled to transform said phosphates into alkaline-earth phosphates suitable for fertilizing purposes in a simple cheap and otherwise beneficial manner, the aluminum and iron contained in said composite phosphates used as raw materials being recovered in the form of aluminum-sodium chlorid and ferric chlorid.

"The distinguishing feature of my improved process consists in this, that a mixture composed of aluminum-iron or calcium-aluminum iron phosphate and an alkaline-earth chlorid is subjected in the presence of water to what is called fractional sublimation, that, is to say, the said mixture is heated with the exclusion of air the temperature being progressively raised above 280° centigrade. By thus operating, I am enabled to directly obtain alkaline-earth phosphates from aluminum-iron or calcium-aluminum-iron phosphates as free from alumina and iron oxids as is practically possible and, moreover, to recover the alumina in the form of the double chlorid of aluminum and sodium, which is largely used for the manufacture of metallic aluminum, and I also recover the iron oxids in the form of ferric chlorid, which may be used as such or decomposed in well known manner by means of water or steam into ferric oxid and hydrochloric acid."

The specification states that the chlorids of alkalin-earth metals most suitable for use for practicing the invention are the chlorids of magnesium and calcium owing to their cheapness and efficiency, but states that it is in no way necessary to employ those chlorids in their pure state; and names other chlorids of alkaline metals with which those may be or are combined.

However, the Schroder patent concededly does not show a process of removing iron from phosphate rock by the use of gaseous hydrogen chloride, the only removal agent specified in the appealed claims.

The patent to Lay is for a process of treating pebble phosphate rock. Its specification recites, in substance, that pebble phosphate is found in nature in the form of pebbles or nodules embedded in a matrix below a layer of sand; that the matrix is usually a variety of limestone, easily disintegrated by hydraulic means; that the usual process of cleaning the sand and matrix particles from the pebbles or nodules had been by the use of a rotary washer; that after being cleaned in this manner the pebbles were still contaminated with a certain amount of foreign matter, such as silica clay, pipe clay, and kaolin, calcium carbonate and other materials of an alkaline nature being also present, as well as iron and alumina.

Lay's process was directed to the "elimination of the clay, iron, alumina and other substances deposited in the pores and crevices of the pebbles and nodules" which, because of their being so deposited, had escaped elimination by the previous usual process, with the result, so it was claimed, that the percentage of the phosphoric acid in the final product was increased.

It appears from a statement in the specification that Lay had designed an apparatus for use in carrying out his process, and the claimed process seems to be limited to the use of the apparatus. Whether he secured a patent for the apparatus does not appear from the record, nor is that material to the issues here involved.

Lay's specification recited that for carrying out his process in the treatment of pebble phosphate rock he introduced a suitable quantity of *sulfuric acid* in solu-

tion into a tank, shown in his apparatus drawing, with the pebbles and nodules. He added that muriatic acid, or some other acid, "may be employed, but at a greater cost."

Concededly, there is nowhere in the Lay patent specification any suggestion that gaseous hydrogen chloride might be used in the treatment of pebble phosphate rock to clean the rock or eliminate anything from the rock.

So far as the secondary references— Saklatwalla, Mitchell, and Kinney—are concerned, they may be said to teach the use of gaseous hydrogen chloride for removal of iron from metallic ore, but they do not teach its use in removing iron or any other substance from phosphate rock. Those patentees were not interested, so far as their patents show, in producing phosphates, and, with all deference to the expert tribunals of the Patent Office, we do not agree that those patents are relevant here.

Appellants' process is limited, so far as the appealed claims show, to a treatment for eliminating a single element— iron—from phosphate rock. Schroder specifies treatment designed to eliminate the compounded products "aluminum-iron" and "calcium-aluminum-iron." Appellants teach that the single element—iron—may be eliminated by the use of gaseous hydrogen chloride; Schroder's teaching is that the compounded elements—aluminum-iron and calcium-aluminum-iron may be eliminated by the use of acids in solution.

We are of opinion that the temperature of about 350° centigrade to 400° centigrade of the gaseous hydrogen chloride to which, according to the appellants' specification and claims, the phosphate rock is exposed fairly and properly should be regarded as critical. A reasonable construction of the teaching of the application, in our opinion, justifies this conclusion. Clearly, the temperature is peculiar to the eliminating agent used.

In view of our conclusion upon the points so far stated, it is unnecessary to prolong this opinion with a discussion of other and minor questions, since if we are correct as to the major questions appellants are entitled to the patent sought.

The decision of the Board of Appeals affirming that of the Primary Examiner is reversed.

Reversed.

JACKSON, J., sat during the argument in this case but retired April 1, 1952, before the opinion was fully prepared. He was recalled in conformity with Section 294(c, d), Title 28 U.S.C. to participate in the decision and did so.